UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAYLA SUGGETT,<br><br>        Plaintiff,<br><br>    v.<br><br>B. KAMMAN, *et al.*,<br><br>        Defendants. | Case No.  2:23-cv-1485-JDP (P)<br><br>ORDER |

Plaintiff, a pro se pretrial detainee in the Solano County Jail, brings this 42 U.S.C. § 1983 action against Kamman, Livingston, Wilson, Hagen, Valdez, and Ammerman—all correctional officers at her jail—alleging that they violated her First Amendment rights by retaliating against her for filing grievances. ECF No. 17. Defendants have moved to dismiss, ECF No. 25, plaintiff has filed an opposition, ECF No. 18, and defendants have filed a reply, ECF No. 19. After review of the pleadings, defendants' motion to dismiss is denied in part and granted in part. Defendants' motion to dismiss the claims against Kamman and Wilson is granted, but with leave to amend; defendants' motion to dismiss is also granted for the claims against Hager and Ammerman, but without leave to amend. Defendants' motion to dismiss the claims against Valdez and Livingston is denied.

**Motion to Dismiss**

### I.    Legal Standard

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). The court construes a pro se litigant's complaint liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), and will only dismiss a pro se complaint "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017) (quoting *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014)). However, "'a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)). Nevertheless, where a complaint fails to state a plausible claim, courts may *sua sponte* give a plaintiff leave to amend unless it determines that the pleading cannot be cured by alleging additional facts. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

**II.     Allegations**

Plaintiff first alleges that, in July 2023, she was a pretrial detainee at the Solano County Jail and had been pro per certified by the facility. ECF No. 7 at 2. Due to her pro per status, the facility issued her certain supplies. *Id.* During a facility move within the jail, Kamman allegedly confiscated and destroyed plaintiff's pro per supplies, which included legal documents, grievances, and witness statements related to a separate suit brought by plaintiff against the jail. *Id.* Plaintiff claims that she demanded her pro per materials back and that, as a result, Kamman wrote her up and placed her in administrative segregation. *Id.* Plaintiff alleges that she tried to show that she was pro per certified, but Hagen continued to justify Kamman's actions. *Id.* Plaintiff had a disciplinary hearing regarding the incident; she alleges that Hagen and Wilson did not act impartially at the hearing, and that Wilson refused to allow her to present evidence. *Id.* at 7.[1]

Next, plaintiff alleges that in retaliation for filing medical grievances, officers began covering her cell window for extended periods of time. *Id.* at 3. She alleges that Valdez covered her window four nights in a row. *Id.* She informed Hagen of the situation and told him that she wanted to add relevant retaliation claims to her grievances, but Hagen refused to let her do so. *Id.* A few days later, Valdez returned to plaintiff's cell in the middle of the night, awakened her, and told her that he was conducting a cell search. *Id.* Plaintiff exited her cell wearing only a t-shirt and shoes, and no undergarments, while Valdez looked around her cell. *Id.* Valdez did not touch anything but glared at plaintiff as he walked out. *Id.* at 3, 8. Valdez continued to cover plaintiff's window at night. *Id.* at 8. Plaintiff then filed an emergency grievance regarding Valdez's cell search, as well as a related Prison Rape Elimination Act ("PREA") grievance. *Id.* at 8. She alleges that Hagan was aware of these issues but chose to do nothing about them. *Id.*

Finally, plaintiff alleges that one night, when Livingston began her shift, she covered plaintiff's window for a male medical unlock, which is required by jail policy under some

---

[1] To the extent that plaintiff attempts to bring a due process claim against Hagen and Wilson based on their actions at her disciplinary hearing, plaintiff is not authorized to bring such claim; her complaint was screened and allowed to move forward on only her First Amendment retaliation claims. *See* ECF No. 8.

circumstances to prevent cross-gender viewing. *Id.* at 4. The unlock ended an hour later, but Livingston kept plaintiff's window covered. *Id.* Plaintiff questioned Livingston about the covering, and Livingston told her that unlocks were continuing. *Id.* Plaintiff did not believe Livingston because she knew the schedule and that unlocks were finished, and she informed Livingston that she had filed grievances related to her window before. *Id.* Livingston again told plaintiff that more unlocks were occurring, and plaintiff began yelling for medical attention because she was having an anxiety attack. *Id.* at 4, 9. She alleges that no one came to assist her, and that Livingston wrote her up for her behavior. *Id.* at 9-10. She contends that Livingston was assigned to plaintiff's area after plaintiff filed grievances against Valdez, and that Livingston continued to engage in the same behaviors as Valdez—and, further that Ammerman allowed Livingston to do so. *Id.* at 9. Plaintiff asserts that these actions were undertaken in an effort to retaliate against her for filing grievances. *Id.* at 10.

### III. Analysis

Defendants move to dismiss plaintiff's complaint, arguing that plaintiff failed to state a claim against any defendant and that they are each entitled to qualified immunity. ECF No. 15-1 at 10-19. Defendants Kamman, Wilson, Valdez, and Livingston argue that plaintiff's allegations fail to show either that they knew plaintiff had filed prior grievances or that their actions actually chilled plaintiff's exercise of her First Amendment rights. *Id.* at 12-14. Next Hagen and Ammerman argue that plaintiff's claims hinge on their knowledge of wrongdoing and failure to correct it—and that is insufficient to state a claim under § 1983. *Id.* at 14-16. Finally, defendants argue they are entitled to qualified immunity because plaintiff failed to identify binding precedent that would have placed each defendant on notice that his or her conduct was unlawful. *Id.* at 16-19.

#### A. First Amendment Retaliation

For an inmate to state a First Amendment retaliation claim, she must allege that "(1) . . . a state actor took some adverse action against [her] (2) because of (3) [her] protected conduct, and that such action (4) chilled the . . . exercise of h[er] First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-

4

1    68 (9th Cir. 2005). Prisoners retain their First Amendment right to file prison grievances, and the
2    constitution protects inmates from retaliation for exercising this right. *Id.* at 567.
3        Importantly, "direct evidence of retaliatory intent rarely can be pleaded in a complaint."
4    *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). As such, an "allegation of a chronology
5    of events from which retaliation can be inferred is sufficient to survive dismissal." *Id.*; *see also*
6    *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) ("timing can properly be considered as
7    circumstantial evidence of retaliatory intent"). Nevertheless, knowledge of the protected activity
8    is "critical" in cases alleging third-party retaliation—such as a correctional officer acting in
9    retaliation due to a grievance filed against another officers—because an officer cannot have acted
10   "in retaliation for—or because of—something about which he had no knowledge." *Cejas v.*
11   *Paramo*, No. 14-CV-1923-WQH(WVG), 2017 WL 1166288, at *6 (S.D. Cal. Mar. 28, 2017); *see*
12   *also Wood v. Yordy*, 753 F.3d 899, 904-05 (9th Cir. 2014) (affirming grant of summary judgment
13   where there was no evidence that defendants knew about plaintiff's prior lawsuit, or that
14   defendants' disparaging remarks were made in reference to prior lawsuit); *Pratt*, 65 F.3d at 808
15   (concluding that the prisoner failed to establish a retaliation claim when there was no evidence
16   that prison officials knew of the conduct giving rise to the alleged retaliatory action); *Garcia v.*
17   *Diaz*, No. 5:20-cv-02564-FLA (MAA), 2021 WL 4775633, at *8 (C.D. Cal. Aug. 24, 2021)
18   (finding a complaint failed to state a First Amendment retaliation claim where there were no
19   allegations to suggest defendants had knowledge of plaintiff's prison grievances).
20        Additionally, at the pleading state, the Ninth Circuit has "*never* required a litigant . . . to
21   demonstrate a *total* chilling of his First Amendment rights to file grievances . . . in order to
22   perfect a retaliation claim." *Rhodes*, 408 F.3d at 568 (emphasis in original). Instead, a plaintiff
23   need only allege that the defendant's conduct "would chill *or* silence a person of ordinary
24   firmness from future First Amendment activities." *Id*. at 568-69 (emphasis in original) (quoting
25   *Mendocino Env't Center v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999); *Brodheim v.*
26   *Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009); *see also Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,
27   824 F.3d 858, 867 (9th Cir. 2016) (holding that "a plaintiff need only show that the defendant
28   intended to interfere with the plaintiff's First Amendment rights and that [she] suffered some

1  injury as a result" (internal quotation marks and citation omitted)).  Plaintiffs are not required to
2  show that their speech was "actually suppressed or inhibited." *Ariz. Students' Ass'n*, 824 F.3d at
3  867.

4  Moreover, while a plaintiff's allegations need to show that the prison officials' retaliatory
5  conduct did not advance a legitimate penological goal, the plaintiff's allegations can sufficiently
6  allege this by stating that the officials' conduct was arbitrary and capricious.  *Watison*, 668 F.3d
7  at 1114-15.  For instance, alleging retaliatory conduct in connection with a prison official filing a
8  false disciplinary report or making false statements is sufficient to allege that the official acted
9  arbitrarily and capriciously.  *See id.* at 1115.

10 Defendants' motion to dismiss is granted in part and denied in part.  As for defendant
11 Kamman, plaintiff's allegations fail to demonstrate that Kamman knew plaintiff had filed a prior
12 lawsuit against the facility, and there are no facts alleged that would allow this court to infer that
13 Kamman's actions were undertaken in retaliation.  Because the claim against Kamman is one of
14 third-party retaliation—Kamman is alleged to have retaliated against plaintiff because plaintiff
15 filed a lawsuit against the facility—Kamman's knowledge of the lawsuit is critical; Kamman
16 could not have confiscated plaintiff's legal supplies in retaliation for a lawsuit of which he had no
17 knowledge.  *See Cejas*, 2017 WL 1166288, at *6; *see also Pratt*, 65 F.3d at 808; *Garcia*, 2021
18 WL 4775633, at *8.  The same is true for plaintiff's claim against Wilson.  Plaintiff's complaint
19 does not demonstrate any causal connection between the lawsuit and Wilson's actions in the
20 disciplinary hearing.  As such, defendants' motion to dismiss the First Amendment retaliation
21 claims against Kamman and Wilson is granted.  I will, however, allow plaintiff leave to amend
22 these First Amendment claims, should she wish to do so.  *See Lopez*, 203 F.3d at 1130 (holding
23 that leave to amend should be granted when it appears plaintiff could cure the deficiencies in her
24 complaint).

25 As for plaintiff's claim against Valdez, her claim is timeline-based.  She alleges that she
26 filed a medical grievance on September 14, 2023, and that, a week later, when Valdez's shifts
27 began at the jail, he started covering her window.  *See* ECF No. 7 at 3.  When plaintiff appealed
28 her grievance, she also informed Hagen that Valdez had been retaliatorily covering her window

1  up. *Id.* After plaintiff made this complaint, Valdez awoke plaintiff in the middle of the night and
2  made her stand outside her cell in only a t-shirt and shoes while he searched her cell. *Id.* This
3  chronology of events supports the inference that Valdez's actions were retaliatory, which is
4  sufficient for the complaint to survive dismissal. *See Watison*, 668 F.3d at 1114. Also, as for
5  Valdez's argument that plaintiff's First Amendment rights were not actually chilled, case law in
6  this circuit does not require that a plaintiff actually have her First Amendment rights chilled to
7  proceed with a retaliation claim. *See Rhodes*, 408 F.3d at 568-69. Finally, plaintiff sufficiently
8  alleged that the covering of her windows and the cell search were not connected to legitimate
9  penological interests because she alleged that these actions were carried out in retaliation. *See*
10 *Watison*, 668 F.3d at 1114-15. As such, defendants' motion to dismiss the First Amendment
11 claim against Valdez is denied.

12       A similar analysis applies to plaintiff's claim against Livingston. According to plaintiff,
13 after she complained about Valdez and filed a PREA complaint against him, Livingston began
14 surveilling her cell. ECF No. 7 at 4. Then Livingston covered her window. *Id.* Based on this
15 timeline, a retaliatory intent could be inferred. *See Watison*, 668 F.3d at 1114. Additionally, any
16 claim that plaintiff's allegations fail because her First Amendment rights were not actually chilled
17 is meritless. *See Rhodes*, 408 F.3d at 568-69. Finally, plaintiff sufficiently alleged that
18 Livingston acted with no legitimate penological purpose. *See Watison*, 668 F.3d at 1114-15.
19 Although plaintiff notes that Livingston stated that she covered plaintiff's window due to unlocks,
20 plaintiff believed Livingston was lying because she knew the unlocking schedule. *See* ECF No. 7
21 at 4. As such, plaintiff has alleged that Livingston left plaintiff's window covered for longer than
22 necessary, which is sufficient at this stage of the proceedings to state a claim. Accordingly,
23 defendants' motion to dismiss the First Amendment retaliation claim against Livingston is also
24 denied.

25       Finally, the claims against Hager and Ammerman are dismissed without leave to amend.
26 Plaintiff's claims against Hager and Ammerman are simply that they allowed others correctional
27 officers to mistreat her; this is insufficient to state a claim, since there is no *respondeat superior*
28 liability under § 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, a supervisory

defendant is liable only for the misconduct of his or her subordinates if he or she participated in or directed that misconduct, or if he or she knew of the violations and failed to act to prevent them. *Id.* Simply alleging that defendants "allowed" the mistreatment to occur is insufficient. *See Sullivan v. Biter*, No. 1:15-cv-243-DAD-SAB, 2017 WL 1540256, *1 (E.D. Cal. Apr. 28, 2017) ("Conclusory allegations that various prison officials knew or should have known about constitutional violations occurring against plaintiff simply because of their general supervisory role are insufficient to state a claim under 42 U.S.C. § 1983.").

### B.     Qualified Immunity

"Determining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). When qualified immunity is asserted in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless the court can determine, *based on the complaint itself*, that qualified immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (emphasis added) (internal quotations and citations omitted). If the operative complaint has even one alleged act that would qualify as a violation of a clearly established constitutional right, a plaintiff has the right to move forward with his claims. *Keates*, 883 F.3d at 1235. There are two prongs in the qualified-immunity inquiry: "(1) whether 'the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established' as of the date of the involved events 'in light of the specific context of the case.'" *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (internal quotation omitted). The court must view the facts "in the light most favorable to the injured party." *Chappell v. Mandeville*, 706 F.3d 1052, 1058 (9th Cir. 2013) (citation omitted). It is clearly established law that correctional officers are prohibited from retaliating against inmates for exercising their First Amendment rights. *Rhodes*, 408 F.3d at 569-70.

Here, the claims against Kamman and Wilson are being dismissed based on plaintiff's failure to allege sufficient causal connection. However, since she is being granted leave to amend, it is premature to conduct a qualified immunity analysis on the claims against Kamman and Wilson. Also, because plaintiff's claims against Hager and Ammerman are dismissed for

failure to state a claim without leave to amend, it is unnecessary to conduct the qualified immunity analysis for these defendants. As for Valdez and Livingston, I deny defendants' motion to dismiss on the basis of qualified immunity because plaintiff has sufficiently pled the denial of a clearly established constitutional right.

Accordingly, it is ORDERED that:

1. Defendants' motion to dismiss, ECF No. 15, is GRANTED in part and DENIED in part as follow:

    a. Plaintiff's First Amendment retaliation claims against Kamman and Wilson are DISMISSED with leave to amend. Should plaintiff wish to amend her complaint as to these claims, she must file an amended complaint within twenty-one days of this order. If plaintiff decides to file an amended complaint, the amended complaint will supersede the current one. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc). This means that the amended complaint will need to be complete on its face without reference to the prior pleading. *See* E.D. Cal. Local Rule 220.

    b. Defendants' motion to dismiss the claims against Valdez and Livingston is DENIED.

    c. Plaintiff's First Amendment retaliation claims against Hager and Ammerman are DISMISSED without leave to amend.

IT IS SO ORDERED.

Dated:   May 12, 2025

                                        JEREMY D. PETERSON
                                        UNITED STATES MAGISTRATE JUDGE